WEST
v.
M'CARTY.

WEST *v.* M'CARTY and Others.

*A.* being indebted to *B.* absconded, leaving personal property in *C.'s* hands. *C.*, afterwards, bought part of the property at an execution-sale, paid debts of *A.* with another part of the property, and retained the residue for a debt due to himself from *A.* *Held*, that without proof of. fraud, *B.* could not sustain a suit in chancery against *A.* and *C.;* but that he might have attached *A.'s* property in *C.'s* hands, and might also, by summoning *C.* as a garnishee, have secured any debt due by the latter to *A.*

Saturday,
January 14,
1837.

APPEAL from the *Marion* Circuit Court.

DEWEY, J.—This was a suit in chancery commenced by the appellees, *Nicholas M'Carty* and *David Williams*, partners in merchandise, and *Jacob Landis* and *Philip Landis*, partners in merchandise, against *J. L. Potter* and *Thomas West.*

The bill alleges that *Potter* was indebted to the respective firms in certain sums; that being so indebted, he and *West* combined together for the purpose of cheating them out of their debts, and that in order to effect that purpose, they made a fraudulent arrangement by which *Potter*, without any consideration, transferred a large amount of notes, accounts, obligations, mortgages, and indentures to *West;* that *Potter*, immediately after this fraudulent transaction, secretly absconded, and had ever since remained out of the jurisdiction of the state; that after the departure of *Potter*, *West* concealed and converted to his own use a large amount of other property which had been left by *Potter*, with intent to defraud the complainants and other creditors of *Potter;* that *West* also claimed as his own, horses, wagons, and other property which had been left in his possession by *Potter;* but that fearing he would be detected in his fraud, he caused an execution for about 30 dollars to be levied upon the property so left; and by fraudulent practices, became himself the purchaser of it at constable's sale, at a price much below its value. The bill further charges that *Potter*, at the time he absconded, was the owner of several certificates, bonds, deeds, and other writings obligatory, for several lots in the town of *Indianapolis*, which he fraudulently transferred to *West;* and that *West* had been for several years before the fraudulent transfers aforesaid, the journeyman of the said *Potter;* that he had fraudulently con-

verted to his own use, several hundred dollars' worth of property belonging to *Potter;* that he had secretly transmitted large sums to *Potter,* and still retained a considerable amount in his own hands.

The answer of *West* denies fraud, and negatives the assignment to him, either fraudulently or otherwise, of any property or choses in action,—denies all knowledge of any certificates or other evidences of ownership in *Potter* of any real estate legal or equitable,—admits that *Potter* left the state and that he has not returned, but alleges that *West* had no knowledge or suspicion that he did not intend to return until long after his departure,—and states that when *Potter* went away, he declared that his intention was to go to *Cincinnati* on business, which *West* believed. It further states, that while *West* was the journeyman of *Potter* he had frequently left home before, leaving *West* as his foreman and agent to transact his business in his absence; that when he last went away, he left with *West* several notes and other demands, to be collected and applied to the payment of his, *Potter's* debts, as *West* was accustomed to do in *Potter's* absence; that some property was left in *West's* hands, a part of which he had caused to be taken on an execution against *Potter;* which issued upon a judgment against him, which *West* and another had replevied; that he had himself bid in the property fairly; that finding *Potter* did not return, and having assumed liabilities for him, he disposed of part of the property to discharge them, and claimed that *Potter* remained considerably in his debt after crediting him with all the property, choses in action, &c., which *West* had received of him.

To the answer of *West,* the complainants filed a general replication, averring that their bill was true.

The state of the accounts between the complainants and *Potter,* and also of those between *Potter* and *West,* including the whole amount of property received by the latter belonging to the former, and the disbursements made by *West* on account of *Potter,* were referred to a master in chancery. It appeared by his report, that *Potter* was indebted to the complainants in the amount claimed by them; and that *West* had received of *Potter* much more property than sufficient to pay them, and that he had, after *Potter's* departure, paid his debts to a considerable amount.

The Circuit Court, founding their decree upon the report of the master, and taking no notice of the charge of fraud, decreed against *Potter* and *West*, to the amount of the complainants' debts against *Potter*. *West* appealed. By agreement of parties, all objection to the appeal on the ground of *Potter's* not joining in it is waived.

The real issue formed by the pleadings, was as to the existence of fraud on the part of *West*. There was no evidence in the cause, in our opinion, to establish the charge of fraud against him. The decree of the Circuit Court is therefore erroneous, as it neither conforms to the allegations of the bill, nor is supported by the testimony adduced. 7 Wheat. Rep. 522, *Crocket* v. *Lee.*—10 Ib. 181, *Carneal* v. *Banks.*

The whole case made out by the answer of *West*, the proof, and the master's report is simply this,—that *Potter* was indebted to the complainants, that he left in *West's* hands property to an amount considerably more than sufficient to pay them, that he absconded and has not yet returned.; that *West*, after his departure, bought in a large portion of the property on execution; that with part of the means which *Potter* left in his hands, he paid debts of the latter, and retains the balance on account of the indebtedness of *Potter* to himself. It is not for us to determine in this case, whether *West* is actually responsible to the complainants, at law, under the circumstances which exist. It is very evident, however, that if they have any remedy against him, it is legal and not equitable. As creditors seeking to liquidate and recover their debts against *Potter*, they have not brought themselves within the rule which entitles creditors to resort to a Court of equity. That rule is, that they must first have obtained judgment at law if they proceed against real property, and judgment and execution if they seek to reach personal property. There are some exceptions to this principle, but these complainants have not brought themselves within any of them. By the process of attachment, they might have seized all the property of *Potter* in *West's* hands, and by summoning the latter as garnishee, they might have secured any debt which he owed *Potter*. 4 Johns. Rep. 671.—2 Blackf. 356.—Ib. 421.

*Per Curiam.*—The decree is reversed with costs. Cause

remanded, with instructions to the Circuit Court to dismiss the bill, &c.

*J. Morrison*, for the appellant.

*C. Fletcher* and *O. Butler*, for the appellees.